UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

TZADIK SIOUX FALLS PORTFOLIO I, LLC
TGM2, LLC
GARDEN VILLAS APARTMENTS, LLC,
TZADIK HIDDEN HILLS APARTMENTS, LLC

Debtors.
_____/

Chapter 11

Case No. 25-13865-PDR
Case No. 25-13867-PDR
Case No. 25-13868-PDR
Case No. 25-13884-PDR
(Jointly Administered)
Main Case No. 25-13865-PDR

**DECLARATION OF ADAM HENDRY IN SUPPORT OF FIRST DAY MOTIONS**

I, Adam Hendry, pursuant to Section 1746 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am the founder, CEO and Managing Member of Tzadik Sioux Falls Portfolio I, LLC ("Portfolio I"); Garden Villas Apartments, LLC ("Garden Villas"); Tzadik Hidden Hills Apartments, LLC ("Hidden Hills"); Tzadik Rapid City Portfolio, LLC ("Rapid City"); and TGM 2, LLC ("TMG 2", and together with Portfolio I, Garden Villas, Hidden Hills, and Rapid City, the "Debtors").

2. I am familiar with the Debtors' day-to-day operations, business, financial affairs, and books and records. I submit this declaration (the "Declaration") to assist the Court and parties-in-interest in understanding the circumstances that compelled the commencement of this chapter 11 case and in support of: (a) the Debtors' petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") filed on April 8, 2025 (the "Petition Date"); and (b) the relief that the Debtors have requested from the Court pursuant to the motions and applications described herein (collectively, the "First Day Motions").

3. I further believe that absent (i) authorization to retain bankruptcy counsel; (ii)

authorization to retain a noticing agent; and (iii) immediate access to cash collateral, as described herein and in the First Day Motions, the Debtors will suffer immediate and irreparable harm to the detriment of its estate, creditors, and other stakeholders.

4. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussion with the members of the Debtors' management, information provided to me by the team working under my supervision, or the Debtors' professional advisors, Edelboim Lieberman PLLC ("EL Law") as legal restructuring counsel, or my opinion based upon my experience and knowledge. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

**I.  Background.**

5. Portfolio I, Garden Villas, and Hidden Hills (the "Operating Debtors") are business entities that own and rent multifamily rental properties located in South Dakota (the "Rental Properties").

6. TMG 2 is a membership owner of Portfolio I and other non-debtor entities. TMG 2 does not have any bank accounts.

7. The Operating Debtors engage a management company, Tzadik Properties, LLC (the "Management Company"), to assist and oversee the rental and operations of the Rental Properties.

8. The Management Company is responsible for, among other things, listing, showing, and renting units within the Rental Properties; collecting and depositing all tenant deposits, rents, charges, and other receivables; maintaining and repairing the Rental Properties; addressing all tenant service requests; maintaining a complete and accurate list of tenants; and

preparing and complying with the approved Annual Plan and Budget for the Rental Properties.

9. The Management Company is responsible for the employment of its own employees required to carry out its duties and obligations to management the Rental Properties.

10. The Management Company is paid as an independent contractor and not as an employee of the Debtors.

11. The Debtors will use the protections and tools afforded by the Bankruptcy Code to resolve its financial issues and reorganize to emerge from bankruptcy so that the Debtors may continue as a healthy and well-capitalized company capable of continuing its operations and providing housing to its residents.

12. The Debtors believe that based on their income stream, accounts receivable and the equity in the real property, the Debtors will be able to confirm a plan.

## II.    Events Leading to Chapter 11.

13. The Debtors are indebted to two lenders, Fannie Mae, serviced by Greystone Servicing Company LLC ("Greystone") and Merchants Bank of Indiana ("Merchants Bank") who retain security interests in the Rental Properties.

14. The Debtors and their respective loans from Greystone and Merchants Bank are as follows:

    A.    Portfolio I and Greystone executed a certain Multifamily Loan and Security Agreement dated as of May 13, 2020 for the principal amount of forty seven million three hundred ninety two thousand dollars ($47,392,000.00) (the "Portfolio I Loan Agreement").

    B.    Garden Villas, Hidden Hills, Rapid City[1] and non debtor-Tzadik Taylor's Place, LLC and Merchants Bank executed a certain Loan Agreement dated as of June 9, 2023 for

---

[1] Recently filed its own bankruptcy case, Case No. 25-24655, a motion for joint administration is pending.

the principal amount of fifty six million five hundred thousand dollars ($56,500,000.00) (the "Combined Merchants Loan Agreement").

15. The Debtors' remained current on their obligations to Greystone and Merchants Bank until they faced a variety of obstacles, both operating and non-operating in nature, including legal issues stemming from an arbitrated dispute with Alejandro Arguelles ("Arguelles") and Gatorlex Consulting, LLC ("Gatorlex").

16. On or around October 8, 2024, a Final Judgment (the "Miami Judgment") was entered in favor of Arguelles and Gatorlex in the amount of ten million six hundred forty five thousand three hundred seventy seven dollars and ninety seven cents ($10,645,377.97).

17. Shortly thereafter, Arguelles and Gatorlex commenced the process of collecting the Miami Judgment by, among other things, issuing Writs of Garnishment and freezing certain of the Debtors' bank accounts.

18. On March 12, 2025, Merchants Bank commenced a foreclosure action against Garden Villas, Hidden Hills, and Rapid City (and other non-debtor affiliates).

### III.    Relief Sought in First Day Papers.

19. The Debtors have filed several First Day Motions seeking relief that is necessary to enable the Debtors to smoothly transition into this chapter 11 case and minimize disruptions to their business operations. I respectfully submit that the relief requested in each of the First Day Motions should be granted, because such relief is a critical element in stabilizing and facilitating the Debtors' operations during the pendency of this chapter 11 case.

20. A summary of the relief requested in each First Day Motion is set forth below. I have reviewed each of the First Day Motions and confirm that all of the facts set forth therein are true and correct to the best of my knowledge and belief, based upon my personal knowledge of the

Debtors' businesses, employees, contractors, operations, and finances; information learned from my review of relevant documents; my discussions with other members of the Debtors' management and advisors; information provided to me by employees and consultants working under my supervision; or my opinion based on experience, knowledge, and information concerning the Debtors' businesses.

A. **Application to Employ EL Law**

21. By the *Application Of Debtors-In-Possession For Entry Of An Order Authorizing The Employment And Retention Of Morgan Edelboim And The Law Firm Of Edelboim Lieberman PLLC As Counsel For Debtors-In-Possession Effective As of the Petition Date* [ECF No. 32] (the "Application to Employ"), the Debtors seek the entry of an order authorizing the Debtors to employ and retain Morgan Edelboim, Esq. ("Edelboim") and the law firm of Edelboim Lieberman PLLC ("EL Law") as its bankruptcy counsel with regard to the filing of its Chapter 11 petition and the prosecution of its Chapter 11 case.

22. Continued representation of the Debtors by their bankruptcy counsel, EL Law, is critical to the success of the Debtors' effective and efficient reorganization and because Lieberman and EL Law are most familiar with the Debtors' financial and legal affairs and their ongoing efforts to restructure their obligations.

23. The Debtors have selected EL Law as their attorneys because of the firm's experience with and knowledge of the Debtors and their financial and legal affairs, as well as their extensive experience with and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

24. The Debtors desire to employ EL Law under a general retainer because of the extensive legal services that will be required in connection with their Chapter 11 cases and the

firm's familiarity with the business of the Debtors.

25. The services of Edelboim and EL Law are necessary to enable the Debtors to execute faithfully their duties as debtors-in-possession. Subject to order of this Court, EL Law will be permitted to render, among others, the following services to the Debtors:

(a) advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their businesses and properties;

(b) attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult the Debtors in connection to the Chapter 11 cases, including without limitation, all of the legal and administrative requirements of operating in Chapter 11;

(c) advise the Debtors in connection with post-petition financing arrangements and draft documents relating thereto;

(d) take all necessary actions to protect and preserve the Debtors' estate, including the prosecution of actions on their behalf, the defense of any actions commenced against the estate, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estate;

(e) prepare on behalf of the Debtors all motions, applications, answers, orders, reports and papers necessary to the administration of the estate;

(f) negotiate and prepare on the Debtors' behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan;

(g) attend meetings with third parties and participate in negotiations with respect to the above matters;

(h) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(i) perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 cases.

26. EL Law is willing to act on behalf of the Debtors as set forth above.

27. Without counsel, the Debtors cannot effectively proceed with their cases and reorganization efforts will be materially harmed. As the Debtors' bankruptcy counsel, EL Law will play an integral role throughout the case.

**B.     Emergency Cash Collateral Motion.**

28. By the *Debtors' Emergency Motion for Interim Authorization to Use Cash Collateral and to Set a Final Hearing* [ECF No. 28] (the "CC Motion"), the Debtors seek the entry of an Order authorizing the Debtors to use Cash Collateral, as that term is defined in 11 U.S.C. § 363(a). The Debtors propose to use the Cash Collateral in the ordinary course of business and pursuant to their respective budgets, attached to CC Motion as Composite Exhibit "A". The Debtors also intend to pay its proposed counsel, EL Law, to the extent permitted, using the Cash Collateral.

29. The Operating Debtors own and operate multi-unit residential Rental Properties throughout South Dakota. The continued operation of the Debtors' businesses will preserve their going concern value and enable the Debtors' to continue to provide housing and essential living conditions to its residents.

30. The Debtors' use of the Cash Collateral includes, but is not limited to, the use of the Debtors' rental payments, cash, checking accounts, depository accounts, accounts receivables, and the products and proceeds thereof to pay for the Debtors' ordinary operating expenses including, but not limited to the payment of the management expenses, insurance providers, utility services, taxes, and all other essential expenses required for the continued management, operation and preservation of the Debtors' business and the Rental Properties.

31. The use of the Cash Collateral will allow the Debtors' to continue their operations and the rental of units in the Residential Properties.

32. If the Debtors are unable to operate and provide their respective services, it will have an adverse effect on their businesses, the Debtors' residents, and will likely negatively impact the ultimate distribution to all constituencies.

33. The Debtors CC Motion proposes to provide sufficient and adequate protection to their secured lenders as more fully detailed in the CC Motion. The Debtors offer as adequate protection, among other things, replacement liens, adequate protection payments, and a significant equity cushion.

34. If the Debtors cannot use Cash Collateral, they will be unable to continue their business operations and housing and maintenance to the residents of the Rental Properties.

35. By contrast, granting authority for the use of Cash Collateral will allow the Debtors to maintain operations and preserve the going concern value of their businesses, which will inure to the benefit of Greystone, Merchants Bank and all other creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 28, 2025
Broward County, Florida

By: /s/ *Adam M. Hendry*
Adam Hendry as authorized
representative of the Debtors