**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                                    Chapter 11

TZADIK SIOUX FALLS PORTFOLIO I, LLC          Case Nos. 25-13865-PDR
TGM2, LLC                                           Case Nos. 25-13867-PDR
GARDEN VILLAS APARTMENTS, LLC,               Case Nos. 25-13868-PDR
TZADIK HIDDEN HILLS APARTMENTS, LLC          Case Nos. 25-13884-PDR
                                                    (Jointly Administered)

Debtors.

_____/

**FANNIE MAE'S OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR**
**AUTHORIZATION TO USE CASH COLLATERAL AND TO SET A FINAL HEARING**

Secured creditor Fannie Mae ("***Holder***" or "***Fannie Mae***") files this Objection (the

"***Objection***") to the *Debtor's Emergency Motion for Authorization to Use Cash Collateral* [ECF

No. 28] (the "***Cash Collateral Motion***")[1] filed by Tzadik Sioux Falls Portfolio I, LLC ("***Tzadik***

***Portfolio***" or the "***Debtor***") and its affiliate debtors (collectively, the "***Debtors***"). Fannie Mae

objects to the use of cash collateral by the Debtor on an interim and final basis and respectfully

states as follows:

**PRELIMINARY STATEMENT**

1.      Fannie Mae has been working proactively with Debtor's counsel to address its

concerns in an order for the consensual use of cash collateral, but to date the parties have not

been able to reach a resolution. Fannie Mae is not opposed *per se* to the use of cash collateral

with certain key requirements addressed, including that:

        i.   No Debtor shall comingle its cash collateral with that of any other Debtor.

        ii.  The Debtor must provide weekly reporting to Fannie Mae.

---

[1] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in
the Cash Collateral Motion.

iii.  Any property repairs must be subject to inspection by Fannie Mae and/or proof to the Court that such repairs have been made in a workmanlike manner. This is necessary as a result of the Debtor's failure to maintain the Mortgaged Property in good condition as evidenced by the property conditions assessments ("*PCAs*") conducted in December 2024 and February 2025.

iv.  Cash adequate protection payments of all excess cash not spent pursuant to the Debtor's budget on a monthly basis.

v.  The Debtor must grant Fannie Mae replacement liens.

vi.  Any cash collateral order must provide for the use of cash collateral for no longer than thirty days during which time Fannie Mae, or its agents, shall be entitled to inspect the Mortgaged Property (defined below), review repairs made to the Mortgaged Property, and review the Debtor's books and records.

vii.  The Debtor must cooperate with Fannie Mae, or its agents, in all inspections of the Mortgaged Property whether to review its condition or for appraisal purposes.

viii.  The Debtor must confirm that all taxes and insurance are paid current and in full force and effect as required under the loan documents.

2.     Fannie Mae opposes the use of cash collateral by the Debtor except upon terms acceptable to Fannie Mae.  In particular, Fannie Mae objects in particular to: (i) any payments to any insider Management Company (as defined herein), which are not permitted under the Loan Documents (as defined herein) and (ii) any payments of fees and expenses to any legal or financial advisors, as to which Fannie Mae does not consent.  In addition, Fannie Mae has concerns about the successful resolution of this chapter 11 case given current management's widespread and public mismanagement of these and other properties.

## **PROCEDURAL BACKGROUND**

3.     On or April 9, 2025 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On April 14, 2025, Fannie Mae filed its *Notice of Non-Consent to Use of Cash Collateral* [ECF No. 12] to preemptively state its opposition to the use of cash collateral in this case.

5.      On April 24, 2025, the Debtor filed the Cash Collateral Motion [ECF No. 28].

## FACTUAL BACKGROUND

2.      Fannie Mae and the Debtor are parties to a multifamily loan as detailed below whereby Fannie Mae loaned funds to the Debtor to buy and operate a multifamily property.

6.      On or about May 13, 2020, Tzadik Portfolio executed that certain Multifamily Loan and Security Agreement (Non-Recourse) (the "***Loan Agreement***") and a Multifamily Note (the "***Note***") in the original amount of $47,392,000.00 (the "***Loan***") payable to Greystone Servicing Company, LLC ("***Greystone***" or "***Original Lender***"), pursuant to which Tzadik Portfolio agreed to and became obligated for the payment of principal and interest and other amounts as more fully described therein.

7.      As security for the obligations under the Note, Debtor executed that certain Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of May 13, 2020, recorded in the Minnehaha County Register of Deeds on May 15, 2020 in Book 1884 on Page 931 and re-recorded on July 9, 2020 in Book 1890 on Page 921 (the "***Mortgage***"). Debtor is the record owner of certain real property described in detail (with legal description) on Exhibit A to the Mortgage (the "***Mortgaged Property***"). The Mortgaged Property consists of 18 individual apartment complexes. A list of the names and addresses of the individual complexes is provided in Table 1 below.

| Name | Address(es) |
|---|---|
| Amber Leaf Apartments | 1301 S. Cleveland Avenue Sioux Falls, South Dakota 57103 |
| Arnolds Park Apartments | 600 & 604 W. Bennett Street; 601 & 609 W. Russell Street; 700, 704 & 708 W. Rice Street; 804, 808, 812 & 900 W. Bailey Street; |

| | 1201, 1205 & 1209 N. Prairie Avenue, Sioux Falls, South Dakota 57104 |
|---|---|
| Eagles Nest Apartments | 4400, 4404, 4500, 4504 & 4508 S. Louise Avenue, 4301, 4409, 4501, 4505, 4509, 4511 & 4515 S. Tennis Lane, Sioux Falls, South Dakota 57106 |
| Eastview Apartments | 3300 E. 11th Street, Sioux Falls, South Dakota 57103 |
| Lake Park Apartments | 1000, 1004, 1008, 1012, 1016 & 1020 N. Covell Avenue, Sioux Falls, South Dakota 57104 |
| Mayfair Westwood Apartments | 3000, 3004, 3008 & 3012 S. Mayfair Drive, Sioux Falls, South Dakota 57106 |
| North Cleveland Apartments | 901-909 N. Cleveland Avenue, Sioux Falls, South Dakota 57103 |
| Richmond Townhomes | 4509, 4511 & 4515 E. 3rd Street, Sioux Falls, South Dakota 57110 |
| River Run Apartments | 701 S. Lyons Avenue, Sioux Falls, South Dakota 57106 |
| Sandy Creek Apartments | 320 N. Western Avenue, Sioux Falls, South Dakota 57104 |
| Sycamore Court Apartments | 4500-4504 E. 16th Street, Sioux Falls, South Dakota 57110 |
| Timber Creek Apartments | 1908 E. Rice Street, Sioux Falls, South Dakota 57103 |
| 47th and Marion | 5208 W. 47 Street & 5212 W. 47 Street, Sioux Falls, South Dakota 57106 |
| Conklin Manor | 304-308 S. Conklin Avenue, Sioux Falls, South Dakota 57103 |
| Holiday Manor Apartments | 360 N. Holiday Avenue; 4205, 4301, 4305, 4401, 4405, 4409 and 4413 E. Ronning Drive, Sioux Falls, South Dakota 57106 |
| North Lake Apartments | 400 N. Lake Avenue, Sioux Falls, South Dakota 57104 |
| Sherman Apartments | 800 & 812 S. Sherman Avenue; 1208 E. 16th Street, Sioux Falls, South Dakota 57104 |
| Summit Apartments | 1000 S. Summit Avenue, Sioux Falls, South Dakota 57105 |

8.     Pursuant to the Mortgage, Debtor granted Greystone a mortgage lien on and security interest in all of the Debtor's right, title and interest in and to the Mortgaged Property and personal property located at the Mortgaged Property.

9.     Concurrent with the Note, Adam M. Hendry (the "***Guarantor***") executed and delivered that certain Guaranty of Non-Recourse Obligations (the "***Guaranty***," together with the Loan Agreement, Note, Mortgage, and all other documents evidencing the Loan, the "***Loan Documents***").

10.     Pursuant to the Loan Documents, Debtor agreed to and became obligated for the payment of principal and other amounts as more fully described therein. Shortly thereafter, the

Loan Documents were assigned by Greystone to the Holder. In particular, the Assignment of Mortgage was recorded on July 16, 2020 in the Minnehaha County Register of Deeds in Book 1891 on page 632 (the "***Assignment***").

11.    As of the Petition Date, the following amounts were outstanding under the Loan Documents: (a) an aggregate outstanding principal amount of not less than approximately $46,775,149.74 and (b) other outstanding obligations under the Loan Documents, including, without limitation, all accrued, accruing, and unpaid interest with respect thereto and any additional fees (including, without limitation, attorneys' fees and related expenses and disbursements), expenses, indemnification obligations, and other charges, and whether such indebtedness or other obligations are existing, future, direct, indirect, acquired, contractual, noncontractual, joint and/or several, fixed, contingent, or otherwise (collectively, the "***Prepetition Secured Obligations***"). The Prepetition Secured Obligations are secured by a first-priority interest in and lien on the Debtor's Mortgaged Property (as defined in the Loan Documents) (the "***Prepetition Collateral***" and the liens and security interests therein, the "***Prepetition Liens***").

12.    As of the date of filing of this Motion, Debtor has failed to make debt service payments to Holder for each of March and April 2025. In addition, prepetition judgments have been issued against the Debtor in Minnehaha County, South Dakota, that have caused liens to attach to the Mortgaged Property.[2]    Finally, Holder has conducted property condition

---

[2] Judgment against Tzadik Sioux Falls Portfolio I LLC (among others), in favor of Madison Lawn Care of Sioux Falls Inc., dated January 15, 2025, docketed January 15, 2025, Case No. CIV23-1688, in the amount of $227,598.64; judgment against Tzadik Sioux Falls I LLC in favor of Stealth Monitoring Inc., dated September 23, 2023, docketed October 4, 2023, as Case No. CIV23-2843; judgment against Tzadik Sioux Falls Portfolio I LLC, aka Tzadik Sioux Falls I LLC, in favor of Aqua Green Carpet Clean, dated February 25, 2025, docketed on February 26, 2025, as Case No. SMC25-73, in the amount of $10,885.22.

assessments (each as "*PCA*" and collectively, the "*PCAs*") on nine of the eighteen properties that reflect a total of approximately $3.4 million in required repairs on the Mortgaged Property.

## ARGUMENT AND AUTHORITIES

13.     A debtor may not use, sell or lease cash collateral unless (a) each entity that has an interest in the cash collateral consents, or (b) the court, after notice and a hearing, authorizes such use, sale or lease of the cash collateral. 11 U.S.C. § 363(c)(2). Additionally, the Court, on request of an entity that has an interest in the cash collateral, shall prohibit or condition the use, sale or lease of cash collateral as is necessary to adequately protect such interest. 11 U.S.C. § 363(e). The Debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p).

14.     In this case, Fannie Mae does not consent to the use of cash collateral for the uses set forth in the budget attached to the Cash Collateral Motion (the "*Budget*") and on the terms in the proposed order accompanying the Cash Collateral Motion.

**A.      Fannie Mae Objects To the Use of Cash Collateral to Pay Legal Fees.**

15.     The five-week Budget shows a total of $88,124.68 attributable to "Other General & Administrative" items. Although the budget does not provide a breakdown of what costs constitute "other general & administrative" spending, Fannie Mae is informed by Debtor's counsel that a portion of this line item is attributable to anticipated legal fees of Debtor's bankruptcy counsel. Fannie Mae objects to the use of its Cash Collateral to pay legal fees that have not yet been approved by this Court for professionals that have not yet been approved by this Court.

16.     These cases were not commenced by the Debtors at the behest of, nor as part of a coordinated strategy with, Fannie Mae.  As such, whereas Fannie Mae recognizes that certain

Page 6

operating expenses must be paid to maintain the properties, Fannie Mae does not endorse and will not financially support any reorganization strategy proposed by the Debtor to be undertaken in this case. As a result, while the budgets accompanying the interim cash collateral order include line items for professional fees, Fannie Mae has not consented to any carveout of its liens to guarantee payment of such fees and does not consent to the use of cash collateral to pay such fees.

**B.     Fannie Mae is Entitled to a Superpriority Administrative Expense Claim to the Extent it is Not Adequately Protected.**

17.     Fannie Mae further objects to the use of cash collateral absent an affirmative grant of adequate protection as provided by 11 U.S.C. § 507(b).  Section 507(b) operates to grant a secured creditor a superpriority administrative claim the extent that the adequate protection otherwise granted to that secured creditor is insufficient to pay off the total indebtedness.

18.     Section 507(b) provides that, if a secured creditor has a claim arising from a debtor's use of cash collateral that exceeds the value of any other adequate protection provided to such secured creditor, the resulting claim arising from the diminution of such secured creditor's interest shall be treated as a "superpriority" claim with priority over all other priority claims allowable under § 507(a)(2).  11 U.S.C. § 507(b); *see also* 4 Collier on Bankruptcy ¶ 507.14 (16th 2025).  Accordingly, orders authorizing the use of cash collateral routinely include an express provision for such superpriority claim to backstop the adequate protection provided elsewhere in such orders.  *See*, *e.g.*, *In re Silver Airways, LLC, et al.*, Case No. 24-23623 (Bankr. S.D. Fla. Jan. 8, 2025) (amending interim cash collateral orders to provide § 507(b) protection).  Accordingly, Fannie Mae objects to the requested relief to the extent it does not provide such affirmative protection.

**C.**      **Fannie Mae Objects to the Use of Cash Collateral to Pay the Debtor-Affiliated Management Company**

19.      The Budget also contemplates payments to the Debtor's affiliated management company, Tzadik Properties, LLC (the "***Management Company***") pursuant to a management agreement executed by Debtor and Management Company (the "***Management Agreement***"). *See* Cash Collateral Motion, ¶¶ 7-9, 7-18. Under the terms of the Loan Documents, however, the Debtor and Management Company agreed that, following notice of an Event of Default (as defined in the Loan Documents), the Management Company "will not accept any payment of fees under or pursuant to the Management Agreement without Lender's prior written consent." *See* Management Agreement, Section b(4). The Management Agreement further states that if Management Company receives any payment of fees under the Management Agreement, that it will hold such payment in trust for Fannie Mae and will remit the same to lender to be applied to the amounts due and owing under the Loan Documents. *See id* at Section b(5).

20.      Moreover, the Management Company has been the subject of multiple news stories for its improper management and the poor living conditions at properties serviced by Management Company,[3] further undermining Fannie Mae's confidence in the Management Company's ability to meaningfully serve the Debtor and its estate and creditors. Accordingly, Fannie Mae objects to the use of cash collateral to pay the Debtor-affiliated Management Company.

---

[3] *See, e.g.*, *Mayer Speaks Out on Tzadik Management Apartments*, Beth Warden, Dakota News Now, Jan. 24, 2024 (available at: https://www.dakotanewsnow.com/2024/01/25/mayor-speaks-out-tzadik-management-apartments/); *Tzadik Property Management tenants in Sioux Falls face gas shutoff notices*, Vanessa Carlson Bender, Sioux Falls Argus Leader, February 3, 2025 (available at: https://www.argusleader.com/story/news/local/2025/01/31/tzadik-property-management-tenants-face-gas-shut-offs-in-sioux-falls/78055432007/); *Tzadik Property members speak at City Council*, Dakota News Now, February 7, 2024 (available at: https://www.dakotanewsnow.com/2024/02/07/tzadik-property-members-speak-city-council/); *Tzadik property foreclosure documents filed*, Beth Warden, Dakota News Now, March 17, 2025 (available at: https://www.dakotanewsnow.com/2025/03/17/tzadik-property-foreclosure-documents-filed/).

### D.  The Debtor is unlikely to operate successfully in chapter 11

21.      Finally, Fannie Mae has reason to believe that this Debtor—one of several such entities owned and controlled by Guarantor and Key Principal Adam Hendry ("***Hendry***")— cannot be operated successfully by current management.  Fannie Mae has learned that several multifamily properties owned and controlled by Hendry have already had tenant associations form,[4] have had receivership motions filed against them,[5] and have been so poorly maintained the properties that their disrepair has become a regularly reported topic in the local media.[6]  In addition, Fannie Mae has learned that the Debtors' principal, Adam Hendry, filed a voluntary individual chapter 11 petition in this Court earlier today.  That case is assigned Case No. 25-14711.

22.      Finally, Fannie Mae notes that over two weeks have passed since the commencement of these cases, and the Debtor has only just now sought authority to use cash collateral. This strongly implies that *either* the Debtor has been using cash collateral to operate the Mortgaged Property without court authorization or lender consent *or* the Debtor has starved the Mortgaged Property of needed operating cash to the possible detriment of both the residents and Fannie Mae's collateral.  Either way, these cases are off to a deeply troubling start, and Fannie Mae reserves all rights in respect of any such mishandling of funds or mismanagement of operations.

---

[4] "East River Tenants Union" (https://eastrivertenants.wixsite.com/east-river-tenants-u): *see also Tzadik property foreclosure documents filed*, Beth Warden, DAKOTA NEWS NOW, March 17, 2025 (available at: https://www.dakotanewsnow.com/2025/03/17/tzadik-property-foreclosure-documents-filed/)  (A newly formed tenants group, East River Tenants Union, has volunteers looking to help renters navigate concerns.)

[5] *See* Motion for Appointment of Receiver, filed April 7, 2025 by Merchants Bank of Indiana, In Circuit Court Second Judicial Circuit, Case No. 49CIV25-001148.

[6] *See* n.3, supra.

## RESERVATION OF RIGHTS

Fannie Mae reserves the right to further object to the Cash Collateral Motion and any other ancillary issues on any grounds and to respond to any reply of the Debtor or any other party-in-interest, either by further submission to this Court, at oral argument or by testimony to be presented at the final hearing on the Cash Collateral Motion or any other hearing.

## CONCLUSION

Under the current circumstances, Fannie Mae does not consent to the use of its cash collateral. However, if the Court nevertheless is inclined to authorize the Debtor to use cash collateral, Fannie Mae hereby requests that the Court condition such use by: (i) ordering the Debtor not to comingle cash collateral among its estate; (ii) requiring the Debtor to provide weekly reporting to Fannie Mae; (iii) requiring that any property repairs must be subject to inspection by Fannie Mae and/or proof to the Court that such repairs have been made in a workmanlike manner; (iv) ordering cash adequate protection payments of all excess cash not spent pursuant to the Debtor's budget on a monthly basis; (v) granting Fannie Mae replacement liens; (vi) authorizing the Debtor's use of cash collateral for no longer than thirty (30) days during which time Fannie Mae, or its agents, shall be entitled to inspect the Mortgaged Property, review repairs made to the Mortgaged Property, and review the Debtor's books and records; (vii) requiring the Debtor to cooperate with Fannie Mae, or its agents, in all inspections of the Mortgaged Property whether to review its condition or for appraisal purposes; and (ix) granting Fannie Mae a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code.

WHEREFORE, Fannie Mae respectfully requests that the Court sustain Fannie Mae's objection, deny the relief requested in the Motion, and grant such other and further relief as the Court may deem just and proper.

Dated: April 28, 2025

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Alexis A. Leventhal*
Alexis A. Leventhal (FL Bar #108064)
1001 Brickell Bay Drive, Suite 900
Miami, Florida 33131
786.747.0247
aleventhal@reedsmith.com

and

Michael P. Cooley*
Devan J. Dal Col*
2850 N. Harwood St., Suite 1500
Dallas, Texas 75201
469.680.4200
mpcooley@reedsmith.com
ddalcol@reedsmith.com
*Pro hac vice application forthcoming*

*Attorneys for Fannie Mae*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

*/s/ Alexis A. Leventhal*
Alexis A. Leventhal, Esq.