UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TZADIK SIOUX FALLS PORTFOLIO I, LLC | Case Nos. 25-13865-PDR |
| TGM2, LLC | Case Nos. 25-13867-PDR |
| GARDEN VILLAS APARTMENTS, LLC, | Case Nos. 25-13868-PDR |
| TZADIK HIDDEN HILLS APARTMENTS, LLC | Case Nos. 25-13884-PDR |
| | (Jointly Administered) |
| Debtors.                                                              / | |

**MERCHANTS BANK OF INDIANA'S OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL AND TO SET A FINAL HEARING**

Secured creditor, Merchants Bank of Indiana ("***MBI***") files this Objection (the "***Objection***") to the *Debtor's Emergency Motion for Authorization to Use Cash Collateral* [ECF No. 28] (the "***Cash Collateral Motion***")[1] filed by Debtors, Garden Villas Apartments, LLC ("Garden Villas"), Tzadik Hidden Hills Apartments, LLC ("Hidden Hills"), and their affiliate debtors (collectively, the "***Debtors***"). MBI objects to the use of cash collateral by the Debtors on an interim and final basis, and in support thereof, respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Along with another secured lender, Fannie Mae, MBI has been negotiating with Debtors' counsel to address its concerns with respect to the Debtors' proposed order for the consensual use of cash collateral on an interim basis, but to date, the parties have been unable to reach a resolution. MBI is not opposed *per se* to the use of cash collateral provided that certain key requirements are addressed, including that:

   i. No Debtor shall comingle its cash collateral with that of any other Debtor;

---

[1] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Cash Collateral Motion.

1

    ii. The Debtors must provide weekly reporting to MBI;

    iii. Any property repairs must be subject to inspection by MBI and/or proof to the Court that such repairs have been made in a workmanlike manner;

    iv. Cash adequate protection payments of <u>all excess cash</u> not spent pursuant to the Debtors' approved budgets be made to MBI on a monthly basis;

    v. The Debtors must grant MBI replacement liens;

    vi. Any cash collateral order must provide for the use of cash collateral for no longer than thirty days during which time MBI and/or its agents, shall be entitled to inspect the Mortgaged Properties (defined below), review repairs made to the Mortgaged Properties, and review the Debtor's books and records;

    vii. The Debtors must cooperate with MBI and/or its agents with respect to all inspections of the Mortgaged Properties, whether to review its condition or for appraisal purposes; and

    viii. The Debtors must confirm that all taxes and insurance are paid and kept current and in full force and effect as required under the applicable loan documents.

2. MBI does not consent to, and opposes, the use of cash collateral by the Debtors except upon terms acceptable to MBI. MBI objects to: (i) any payments to any insider Management Company (as defined herein), which are not permitted under the Loan Documents (as defined herein), and (ii) any payments of fees and expenses to any legal or financial advisors, to which MBI does not consent. In addition, MBI has concerns about the successful resolution of this Chapter 11 case given current management's well publicized and widespread mismanagement of these and other properties.

## RELEVANT PROCEDURAL BACKGROUND

3. On or April 9, 2025 and April 10, 2025 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4. On April 24, 2025, MBI filed its *Notice of Non-Consent to Use of Cash Collateral* [ECF No. 27] to preemptively state its opposition to the use of its cash collateral in these cases.

2

5. On April 24, 2025, the Debtors filed the Cash Collateral Motion.

**RELEVANT FACTUAL BACKGROUND**

6. MBI and Debtors, Garden Villas and Hidden Hills, are parties to certain multifamily loans as detailed below. MBI loaned funds to Debtors, Garden Villas and Hidden Hills to buy and operate certain multifamily properties.

7. On June 5, 2023, Garden Villas and Hidden Hills[2] executed a promissory note in favor of MBI (the "Note"). Pursuant to the Note, MBI loaned Garden Villas and Hidden Hills $56,500,000.00 (the "Loan"), with interest on the principal balance accruing as provided for in the Note until the maturity date of June 10, 2030.

8. At the same time and as part of the same transaction, Garden Villas and Hidden Hills entered into a loan agreement ("Loan Agreement") with MBI that provided, among other things, that the Loan was to bear interest as provided for under the Note and was payable in the manner specified in the Note.

9. As security for the obligations under the Note, Garden Villas executed a Mortgage – One Hundred Eighty Day Redemption Real Estate Mortgage Security Agreement and Assignment of Leases and Fixture Filing (the "Garden Villas Mortgage"), which granted MBI a security interest in and to the following described property:

> Tract 1 of the Garden Village II, an Addition to the City of Sioux Falls, Lincoln County, South Dakota, according to the recorded plat thereof.

The common address is 605, 615, 625 W. 81st Street, Sioux Falls, South Dakota 57108 (the "Garden Villas Mortgaged Property").

---

[2] Two other entities, not included in these jointly administered cases and not yet having filed bankruptcy, Tzadik Taylor's Place, LLC ("Taylor's Place") and Tzadik Rapid City Portfolio I, LLC ("Rapid City"), also signed the Note and Loan Agreement.

10. As further security for the Note, Hidden Hills executed security instruments in favor of MBI. Hidden Hills also executed a One Hundred Eighty Day Redemption; Real Estate Mortgage, Security Agreement and Assignment of Leases and Fixture Filing ("Hidden Hills Mortgage"). The Hidden Hills Mortgage granted MBI a security interest in the following described property:

> Lot 1, Block 1, Hidden Hills Addition to the City of Sioux Falls, Minnehaha County, South Dakota, according to the recorded plat thereof.

The common address is 950 North Cliff Avenue, Sioux Falls, South Dakota 57103 (the "Hidden Hills Mortgaged Property," and collectively with the Garden Villas Mortgaged Property, the "Mortgaged Properties").

11. Pursuant to the Garden Villas Mortgage and the Hidden Hills Mortgage, Garden Villas and Hidden Hills granted MBI a mortgage lien on and security interest in all of their right, title and interest in and to (i) the Garden Villas Mortgaged Property, personal property located at the Garden Villas Mortgaged Property, and (ii) the Hidden Hills Mortgaged Property, and personal property located at the Hidden Hills Mortgaged Property.

12. Concurrent with execution of the Note, Adam M. Hendry (the "**Guarantor**") executed and delivered that certain Limited Guaranty (the "**Guaranty**," together with the Loan Agreement, Note, the Garden Villas Mortgage, the Hidden Hills Mortgage, and all other documents evidencing the Loan, the "**Loan Documents**").[3]

13. As of the Petition Date, the following amounts were outstanding under the Loan Documents: (a) an aggregate outstanding principal amount of not less than approximately $57,805,174.12 and (b) other outstanding obligations under the Loan Documents, including, without limitation, all accrued, accruing, and unpaid interest with respect thereto and any additional fees (including, without limitation, attorneys' fees and related expenses and disbursements),

---

[3] Adam Hendry filed a voluntary Chapter 11 (skeleton) petition on April 28, 2025 with this Court which has been assigned Case No. 25-14711-SMG.

expenses, indemnification obligations, and other charges, and whether such indebtedness or other obligations are existing, future, direct, indirect, acquired, contractual, noncontractual, joint and/or several, fixed, contingent, or otherwise (collectively, the "**Prepetition Secured Obligations**"). As noted above, the Prepetition Secured Obligations are secured by a first-priority interests in and liens on the Debtors' Mortgaged Property (as defined in the Loan Documents) (the "**Prepetition Collateral**" and the liens and security interests therein, the "**Prepetition Liens**").

14. On November 6, 2024, MBI sent Debtors a Notice of Failure to Pay Taxes; Demand for Reimbursement of Protective Advance and Replenishment of Tax Reserve Account (the "Notice and Demand").

15. MBI had received invoices from the Treasurers of Pennington County, Minnehaha County, and Lincoln County, South Dakota for taxes on the Mortgaged Properties in the amounts of $108,084.41, $224,739.10, and $78,203.01, respectively, due October 31, 2024 (the "Specified Taxes"). On October 23, 2024, the balance of the Tax Reserve Account was $0, in breach of Debtors' responsibility to maintain a Tax Reserve Account to pay taxes on the Property. As a result, MBI was forced to make protective advances, on behalf of Debtors on October 23, 2024, in the amount of $411,562.61 to the Treasurers of Pennington County, Minnehaha County, and Lincoln County, South Dakota for payment of the Specified Taxes by the due date.

16. As of the date of this Objection, Debtors have failed to pay required monthly interest payments since at least July 2024.

17. In addition, MBI demanded immediate payment of $1,106,207.43 by Borrowers[4] for past due interest payments and as reimbursement for the specified protective advance and immediate replenishment of the Tax Reserve Account. MBI notified Debtors that Borrowers' failure

---

[4] This demand for $1,106,207.43 included amounts owed by the Debtors is these cases as well as other related non-Debtor borrowers, Taylor's Place and Rapid City.

to make such repayment and replenishment would constitute an Event of Default (as that term is defined in the Loan Agreement) if not rectified within ten (10) days of the date of the Notice and Demand.

18. To date, the Debtors and non-Debtor borrowers have not cured the Events of Default or complied with the valid demands described in the Notice and Demand letter.

19. On December 17, 2024, MBI sent Debtors an Acceleration Notice pursuant to Section 11(a) of the Loan Agreement and MBI declared the unpaid principal and accrued interest on the Note to be immediately due and payable, in addition to all costs, fees, and expenses chargeable and owing under the Loan Documents.

20. Despite the notice of acceleration and demand, Debtors have failed to make any payment of any of the amounts owed. As of the date of this Objection there remains due and owing principal and interest that total $57,805,174.12. In addition, interest, costs, fees, attorneys' fees, and other amounts continue to accrue.

21. Additionally, on October 8, 2024 a final judgment was entered against Guarantor in the amount of $10,645,377.97 (the "Judgment") in that certain case captioned *Arguelles et al., v. Hendry*, et al. pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (case number 2024-004821-CA-01). This judgment has been pending and not satisfied for approximately 203 days as of April 29, 2025. Pursuant to Article 10, § 10.1(w), a "judgment for the payment of money…which judgment…exceeds [$100,000.00] that remains undischarged and unstayed for a period of ninety (90) consecutive days" shall constitute and Event of Default. MBI is also informed and believes, based on contact from municipal authorities that the Mortgaged Properties are subject of several pending code violative conditions. Despite its best efforts, due to Debtors' conduct, MBI has been unable to access the Mortgaged Real Estate for the

purposes of inspecting the same, obtaining accurate occupancy reporting, and to conduct independent appraisals.

## ARGUMENT AND AUTHORITIES

22. A debtor may not use, sell or lease cash collateral unless (a) each entity that has an interest in the cash collateral consents, or (b) the court, after notice and a hearing, authorizes such use, sale or lease of the cash collateral. 11 U.S.C. § 363(c)(2). Additionally, the Court, on request of an entity that has an interest in the cash collateral, shall prohibit or condition the use, sale or lease of cash collateral as is necessary to adequately protect such interest. 11 U.S.C. § 363(e). The debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p).

23. In this case, MBI does not consent to the use of cash collateral for the uses set forth in the budgets attached to the Cash Collateral Motion (the "***Budgets***") and on the terms in the proposed order accompanying the Cash Collateral Motion.

A. **MBI Objects To the Use of its Cash Collateral to Pay Debtors' Legal Fees**

24. The Hidden Hills Budget shows a total of $25,359.11 attributable to "Other General & Administrative" items. The Garden Villas Budget shows a total of $10,598.95 attributable to "Other General & Administrative" items, as well. Although the Budgets do not provide a breakdown of what costs constitute "other general & administrative" spending, MBI is informed by Debtors' counsel that certain portions of these line items are attributable to anticipated legal fees of Debtors' bankruptcy counsel. MBI objects to the use of its cash collateral to pay legal fees that have not yet been approved by this Court for professionals that have not yet been approved by this Court.

25. These cases were not commenced by the Debtors at the behest of, nor as part of a coordinated strategy with, MBI. While certain operating expenses must be paid to maintain the properties, MBI does not endorse and will not financially support any reorganization strategy proposed by the Debtors to be undertaken in this case. As a result, while the Budgets include line

7

items for Debtors' professional fees, MBI has not and does not consent to any carveout to guarantee payment of such fees and does not consent to the use of its cash collateral to pay such fees.

**B.     MBI is Entitled to a Superpriority Administrative Expense Claim to the Extent it is Not Adequately Protected**

26.    MBI further objects to the use of cash collateral absent an affirmative grant of adequate protection as provided by 11 U.S.C. § 507(b). Section 507(b) provides operates to grant a secured creditor a superpriority administrative claim the extent that the adequate protection otherwise granted to that secured creditor.

27.    Section 507(b) provides that, if a secured creditor has a claim arising from a debtor's use of cash collateral that exceeds the value of any other adequate protection provided to such secured creditor, the resulting claim arising from the diminution of such secured creditor's interest shall be treated as a "superpriority" claim with priority over all other priority claims allowable under § 507(a)(2).  11 U.S.C. § 507(b); *see also* 4 Collier on Bankruptcy ¶ 507.14 (16th 2025). Accordingly, orders authorizing the use of cash collateral routinely include an express provision for such superpriority claim to backstop the adequate protection provided elsewhere in such orders. *See*, *e.g.*, *In re Silver Airways, LLC, et al.*, Case No. 24-23623 (Bankr. S.D. Fla. Jan. 8, 2025) (amending interim cash collateral orders to provide § 507(b) protection). MBI objects to the requested relief to the extent it does not provide such affirmative protections.

**C.     MBI Objects to the Use of Cash Collateral to Pay the Debtor-Affiliated Management Company**

28.    The Budgets also contemplate payments to the Debtors' affiliated management company, Tzadik Properties, LLC (the "**Management Company**") pursuant to a management agreement executed by the Debtors and Management Company (the "***Management Agreement***"). *See* Cash Collateral Motion, ¶¶ 7-9, 7-18. Under the terms of the Loan Documents, however, the Debtors and Management Company agreed that, the Management Agreement "shall automatically

and immediately terminate upon…the filing of a voluntary petition for bankruptcy…by either Owner (Hidden Hills and/or Garden Villas)…" As such, the

29. Moreover, the Management Company has been the subject of multiple news stories for its improper management and the poor living conditions at properties serviced by Management Company,[5] further undermining MBI's confidence in the Management Company's ability to meaningfully serve the Debtors and their estates and creditors. Accordingly, MBI objects to the use of cash collateral to pay the Debtor-affiliated Management Company.

### D. The Debtors are unlikely to operate successfully in Chapter 11

30. Finally, MBI has reason to believe that these Debtors—two of several such entities owned and controlled by Guarantor and Key Principal Adam Hendry ("*Hendry*")(who, as noted above has just filed his own Chapter 11 case with this Court)—cannot be operated successfully by current management. MBI has learned that several multifamily properties owned and controlled by Hendry have already had tenant associations form,[6] have had receivership motions filed against them,[7] and have been so poorly maintained the properties that their disrepair has become a regularly reported topic in the local media.[8]

---

[5] *See, e.g.*, *Mayor Speaks Out on Tzadik Management Apartments*, Beth Warden, DAKOTA NEWS NOW, Jan. 24, 2024 (available at: https://www.dakotanewsnow.com/2024/01/25/mayor-speaks-out-tzadik-management-apartments/); *Tzadik Property Management tenants in Sioux Falls face gas shutoff notices*, Vanessa Carlson Bender, SIOUX FALLS ARGUS LEADER, February 3, 2025 (available at: https://www.argusleader.com/story/news/local/2025/01/31/tzadik-property-management-tenants-face-gas-shut-offs-in-sioux-falls/78055432007/); *Tzadik Property members speak at City Council*, DAKOTA NEWS NOW, February 7, 2024 (available at: https://www.dakotanewsnow.com/2024/02/07/tzadik-property-members-speak-city-council/); *Tzadik property foreclosure documents filed*, Beth Warden, DAKOTA NEWS NOW, March 17, 2025 (available at: https://www.dakotanewsnow.com/2025/03/17/tzadik-property-foreclosure-documents-filed/).

[6] "East River Tenants Union" (https://eastrivertenants.wixsite.com/east-river-tenants-u): *see also Tzadik property foreclosure documents filed*, Beth Warden, DAKOTA NEWS NOW, March 17, 2025 (available at: https://www.dakotanewsnow.com/2025/03/17/tzadik-property-foreclosure-documents-filed/) (A newly formed tenants group, East River Tenants Union, has volunteers looking to help renters navigate concerns.)

[7] *See* Motion for Appointment of Receiver, filed April 7, 2025 by Merchants Bank of Indiana, In Circuit Court Second Judicial Circuit, Case No. 49CIV25-001148.

[8] *See* n. 5, supra.

31. Further, over two weeks have passed since the commencement of these cases, and the Debtors have only just now sought authority to use cash collateral. This strongly implies that *either* the Debtors have been using cash collateral to operate the Mortgaged Properties without court authorization or lender consent *or* the Debtor has starved the Mortgaged Properties of needed operating cash to the possible detriment of both the residents and MBI's collateral. Either way, the Debtors appear to be struggling, even more so than the typical Chapter 11 petitioner. MBI reserves all rights in respect of any such mishandling of funds or mismanagement of operations.

## RESERVATION OF RIGHTS

32. In addition, MBI reserves the right to further object to the Cash Collateral Motion and any other ancillary issues on any grounds and to respond to any reply of the Debtors or any other party-in-interest, either by further submission to this Court, at oral argument or by testimony to be presented at the final hearing on the Cash Collateral Motion or any other hearing.

## CONCLUSION

33. Under the current circumstances, MBI does not consent to the use of its cash collateral. However, if the Court nevertheless is inclined to authorize the Debtors to use cash collateral, MBI hereby requests that the Court condition such use by: (i) ordering the Debtors not to comingle cash collateral among its estates; (ii) requiring the Debtors to provide weekly reporting to MBI; (iii) requiring that any property repairs be subject to inspection by MBI and/or proof to the Court that such repairs have been made in a workmanlike manner; (iv) ordering cash adequate protection payments of all excess cash not spent pursuant to the Debtors' budget on a monthly basis; (v) granting MBI replacement liens; (vi) authorizing the Debtors' use of cash collateral for no longer than thirty (30) days during which time MBI, or its agents, shall be entitled to inspect the Mortgaged Properties, review repairs made to the Mortgaged Properties, and review the Debtors' books and records; (vii) requiring the Debtors to cooperate fully with MBI and/or its agents in all

inspections of the Mortgaged Properties whether to review their condition or for appraisal purposes; and (ix) granting MBI a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code.

**WHEREFORE**, secured creditor, Merchants Bank of Indiana, respectfully requests that this Honorable Court (i) sustain MBI's objection, (ii) deny the relief requested in the Cash Collateral Motion, and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: April 29, 2025

        Respectfully submitted,

        BAST AMRON LLP
        *Attorneys for Merchants Bank of Indiana*
        One Southeast Third Avenue, Suite 2410
        Miami, FL 33131
        Telephone: 305.379.7904
        Email: sbrown@bastamron.com

        By: */s/ Scott N. Brown*
           Scott N. Brown, Esq. (FBN 663077)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF on those parties registered to receive CM/ECF notice in this case on April 29, 2025.

        By: */s/ Scott N. Brown*
           Scott N. Brown, Esq.