UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TZADIK SIOUX FALLS PORTFOLIO I, LLC | Case Nos. 25-13865-PDR |
| TGM2, LLC | Case Nos. 25-13867-PDR |
| GARDEN VILLAS APARTMENTS, LLC, | Case Nos. 25-13868-PDR |
| TZADIK HIDDEN HILLS APARTMENTS, LLC | Case Nos. 25-13884-PDR |
| | (Jointly Administered) |
| Debtors._____/ | |

**FANNIE MAE'S LIMITED OBJECTION TO APPLICATION OF
DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF MORGAN B. EDELBOIM, ESQ. AND
EDELBOIM LIEBERMAN PLLC, AS COUNSEL FOR DEBTORS-IN-POSSESSION
EFFECTIVE AS OF THE PETITION DATE**

Secured creditor Fannie Mae ("***Holder***" or "***Fannie Mae***") files this Objection (the "***Objection***") to the *Application of Debtors-in-Possession for Entry of on Order Authorizing the Employment and Retention of Morgan B. Edelboim, Esq. and Edelboim Lieberman PLLC, As Counsel for Debtors-in-Possession Effective as of the Petition Date* [ECF No. 32] (the "***Application***")[1] filed by Tzadik Sioux Falls Portfolio I, LLC ("***Tzadik Portfolio***" or the "***Debtor***") and its affiliate debtors (collectively, the "***Debtors***") and respectfully states as follows:

**PROCEDURAL BACKGROUND**

1. On or April 9, 2025 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On April 14, 2025, Fannie Mae filed its *Notice of Non-Consent to Use of Cash Collateral* [ECF No. 12] to preemptively state its opposition to the use of its cash collateral (the "***Cash Collateral***") in this case.

---

[1] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Application.

Page 1

3.      On April 24, 2025, the Debtors filed their Emergency Motion for Authorization to Use Cash Collateral [ECF No. 28] (the "*Cash Collateral Motion*").

4.      On April 25, 2025 the Debtor filed the Application [ECF No. 32].

5.      On April 28, 2025 Fannie Mae filed its objection [ECF No. 37] to the Cash Collateral Motion in which Fannie Mae objected, among other things, to the use of its cash collateral to pay the fees and expenses of any professionals employed by the Debtors in these cases.

6.      On April 29, 2025 the Court held a hearing on the Cash Collateral Motion, at which the parties announced an agreement on the interim use of cash collateral.  In that hearing, Fannie Mae expressly reserved its continued objection to the use of cash collateral to pay professional fees.

## **LIMITED OBJECTION**

7.      Fannie Mae does not object to the Debtors' request to employ counsel nor to the Debtors' choice of counsel.  Rather, Fannie Mae objects to the requested relief only to the extent that any of the Debtors propose to use Fannie Mae's Cash Collateral to pay the fees and expenses of such professionals.  These cases were not commenced by the Debtors at the behest of, nor as part of a coordinated strategy with, Fannie Mae.  To the contrary, they appear to be motivated by a desire to preserve some perceived equity value in the Debtors' properties for the benefit of the current owners.

8.      In the Application, Debtors indicate that they intend to reorganize and "potentially market and sell certain assets," but Fannie Mae should not be forced to shoulder the burden of a strategy that exists fundamentally for the benefit of equity. *See* Application, ¶¶ 10, 12.

Compounding this uncertainty is the fact of the key principal's own personal bankruptcy and the threat of additional filings by certain affiliated entities.

9. Fannie Mae's recent consent to the use of cash collateral on an interim basis was based on the recognition that certain operating expenses must be paid to maintain the properties, and not based in any endorsement of any particular reorganization strategy of the Debtors to be undertaken in this case. Fannie Mae has not consented to any carveout of its liens to guarantee payment of such professional fees supporting any such reorganization strategy.

10. None of this is to say that the Debtors do not have the right to pursue confirmation of their preferred plan of reorganization or to seek discovery or take other actions in furtherance of that goal. But neither should Fannie Mae be compelled to underwrite the cost of such efforts.

ACCORDINGLY, and for the avoidance of doubt, Fannie Mae **objects** to the use of any Cash Collateral in these cases for the payment of the fees and expenses of any estate-paid professionals, including any legal or financial advisor or chief restructuring officer. Fannie Mae has not consented, and does not consent, to the surcharge of its collateral, including any Cash Collateral, under 11 U.S.C. § 506(c) and submits that any such professional fees and expense do not fall within the scope of "reasonable, necessary costs and expenses of preserving, or disposing of" Fannie Mae's collateral.

Dated: May 8, 2025

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Alexis A. Leventhal*
Alexis A. Leventhal (FL Bar #108064)
1001 Brickell Bay Drive, Suite 900
Miami, Florida 33131
786.747.0247

aleventhal@reedsmith.com

and

Michael P. Cooley*
Devan J. Dal Col*
2850 N. Harwood St., Suite 1500
Dallas, Texas 75201
469.680.4200
mpcooley@reedsmith.com
ddalcol@reedsmith.com
*Pro hac vice application forthcoming*

*Attorneys for Fannie Mae*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

*/s/ Alexis A. Leventhal*
Alexis A. Leventhal, Esq.