UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TZADIK SIOUX FALLS PORTFOLIO I, LLC | Case No. 25-13865-PDR |
| TGM2, LLC | Case No. 25-13867-PDR |
| GARDEN VILLAS APARTMENTS, LLC, | Case No. 25-13868-PDR |
| TZADIK HIDDEN HILLS APARTMENTS, LLC | Case No. 25-13884-PDR |
| TZADIK RAPID CITY PORTFOLIO I, LLC | Case No. 25-14655-PDR |
| TZADIK SIOUX FALLS I, LLC | Case No. 25-15329-PDR |
| TZADIK SIOUX FALLS PORTFOLIO III, LLC | Case No. 25-15387-PDR |
| | (Jointly Administered) |
| Debtors. | Main Case No. 25-13865-PDR |
| _____/ | |

**SUPPLEMENTAL DECLARATION OF MORGAN B. EDELBOIM, ESQ.
MEMBER OF PROPOSED ATTORNEY FOR DEBTORS-IN-POSSESSION
<u>EDELBOIM LIEBERMAN PLLC</u>**

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

I, Morgan B. Edelboim, Esq., being duly sworn, declare and state as follows pursuant to 28 U.S.C. § 1746 and Local Rule 2014-1

1.  I am an attorney and member of the law firm of Edelboim Lieberman PLLC ("EL Law") which maintains offices for the practice of law at, among other places, 2875 NE 191st St., Penthouse One, Aventura, Florida 33180. I am familiar with the matters set forth herein and make this Declaration (the "Declaration") in support of the *Emergency Application Of Debtors-In-Possession For Entry Of An Interim Order Authorizing The Employment And Retention Of Morgan B. Edelboim, Esq., And The Law Firm Of Edelboim Lieberman PLLC, As Counsel For Debtors-In-Possession Effective As Of The Petition Date (ECF No. 32)* filed by Debtors-In-Possession Tzadik Sioux Falls Portfolio I, LLC ("Portfolio I"); Garden Villas Apartments, LLC ("Garden

Villas"); Tzadik Hidden Hills Apartments, LLC ("Hidden Hills); and TGM 2, LLC ("TMG 2"), the *Supplement to Application of Debtors-In-Possession For Entry Of An Interim Order Authorizing The Employment And Retention Of Morgan B. Edelboim, Esq., And The Law Firm Of Edelboim Lieberman PLLC, As Counsel For Debtors-In-Possession Effective As Of The Petition Date* (ECF No. 57) filed by Debtor-In-Possession Tzadik Rapid City Portfolio I, LLC ("Rapid City").

2. I also submit this Declaration in support of the *Application of Debtors-In-Possession For Entry Of An Interim Order Authorizing The Employment And Retention Of Morgan B. Edelboim, Esq., And The Law Firm Of Edelboim Lieberman PLLC, As Counsel For Debtors-In-Possession Effective As Of The Petition Date* (ECF No. 191) filed by Debtors-In-Possession Tzadik Sioux Falls I, LLC ("TSFI") and Tzadik Sioux Falls Portfolio III, LLC ("Portfolio III" and together with the above referenced Chapter 11 Debtors-In-Possession, the "Debtors").

3. In support of the Application, I disclose the following:

   a. Unless otherwise stated, this Declaration is based upon facts of which I have personal knowledge.

   b. In preparing this Declaration, I have reviewed the list of creditors of Debtors provided to us by the Debtors. EL Law has conducted a conflict check from the information obtained thereby. The facts stated in this Declaration as to the relationship between EL Law and Debtors, Debtors' creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of EL Law's conflict check. Based upon EL Law's conflict check, as required by 11 U.S.C. § 327(a),

    EL Law and I do not represent any entity or any interest in any matter adverse to Debtors or the estates which would constitute a conflict of interest or impair the disinterestedness of EL Law in respect of its representation of Debtor herein. EL Law does disclose that in January 2023 and continuing through approximately September 2024, EL Law was originally engaged by the Debtors and its manager/insider, Adam Hendry, to explore potential bankruptcy and pre-bankruptcy resolutions in connection with the dispute between the Debtors, other non-debtor affiliates, Mr. Hendry, and Alejandro Arguelles and Gatoralex Consulting, LLC. On or about March 18, 2025, the Debtors and certain non-debtor parties (but not Hendry), reengaged EL Law in connection with chapter 11 preparation and filing. EL Law will not represent Hendry in the instant bankruptcy cases and Hendry has engaged separate counsel.

c. Upon investigation and review of the books and records of the Debtors it has come to the attention of EL Law that Portfolio I is indebted to certain affiliates as of May 31, 2025 as follows: (i) Tzadikzorro, LLC in the total amount of $698,353.53; (ii) TSFI in the amount of $689,926.57; (iii) Portfolio III in the amount of $8,447.76; (iv) Garden Villas in the amount of $55,540.29; (v) Hidden Hills in the amount of $243,620.80; (vi) Adam Hendry in the amount of $84,497.20; and (vii) Horizon Apartments, LLC in the amount of $477.90.

d. Upon review of the books and records of the Debtors it has come to the attention of EL Law that certain of its affiliates are indebted to Portfolio I, LLC as of May 31, 2025 as follows: (i) Tzadik Taylors Place, LLC in the amount of $151,203.74; (ii) Tzadik City View, LLC in the amount of $56,246.96; (iii) Tzadik Leasing, LLC

   in the amount of $2,231.50; (iv) Bayit En La Playa, LLC in the amount of $14,000.00; (v) Tzadik Energy Portfolio LLC in the amount of $29,811.16; (vi) Tzadik Blue Hawk LLC in the amount of $12,861.67; (vii) Tzadik Properties, LLC in the amount of $1,876,857.35; (viii) Tzadik Acquisitions, LLC in the amount of $297,985.29; (ix) Rapid City in the amount of $46,520.66; and (x) Vista Lodge, LLC in the amount of $6,500.00.

 e. Upon review of the books and records of the Debtors it has come to the attention of EL Law that as of May 31, 2025 TSFI is indebted to Hidden Hills in the amount of $68.27.

 f. Upon review of the books and records of the Debtors it has come to the attention of EL Law that certain of its affiliates are indebted to TSFI as of May 31, 2025 as follows: (i) Tzadik Properties, LLC in the amount of $371,006.91; (ii) Tzadik Blue Hawk LLC, in the amount of $4,175.92; (iii) Garden Villas in the amount of $12,682.49; (iv) Tzadik Acquisitions, LLC in the amount of $355,241.09; (v) Rapid City in the amount of $5,055.80; (vi) Tzadik City View, LLC in the amount of $7,500.00; (vii) Portfolio III in the amount of $62.51; (viii) Tzadikzorro, LLC $112,412.89; (ix) Tzadik Taylor's Place, LLC in the amount of $64,087.31; (x) Portfolio I in the amount of $689,926.57; and (xi) Tzadik Mount Rushmore Hotel, LLC in the amount of $11,000.00.

4.  EL Law's conflicts check revealed no connections with this case which, in my view, would impair my or EL Law's disinterestedness or constitute any conflict of interest.

5.  EL Law and I neither hold nor represent any interest adverse to Debtors and is a "disinterested person" within the scope and meaning of Section 101(14) of the Bankruptcy Code.

6. Neither I, any attorney with my firm, nor EL Law has or will represent any other entity in connection with these cases, and, unless otherwise authorized by the Court, neither I, any attorney with my firm, nor EL Law will accept any further fee from any other party or parties in this case, except the Debtors-In-Possession.

7. Pursuant to 11 U.S.C. § 329(a), EL Law discloses that it rendered services to the Debtors and received a $175,000 consolidated retainer funded by insider/affiliate, Adam Hendry, with the wire initiated by Tzadik Management Group, LLC, for the benefit of Debtors and certain other non-debtor affiliates.

8. On or about March 18, 2025, the Debtors (and other affiliated non-debtor entities) executed an engagement agreement with Edelboim and EL Law to develop such strategies consistent with the best interests of the Debtors. Attached hereto as Attachment "1" is a copy of the same.

9. On or about March 28, 2025, a $175,000 consolidated retainer funded by insider/affiliate, Adam Hendry, with the wire initiated by Tzadik Management Group, LLC, for the benefit of Debtors and certain other non-debtor affiliates.

10. On April 1, 2025, prior to filing the petitions, EL Law issued an invoice in the amount of $36,587.50 and drew down from the $175,000.00 retainer to satisfy same. Then, just prior to filing Debtors' petitions, EL Law issued a further invoice in the amount of $33,692.51 and drew from the balance of the $175,000 retainer to satisfy same. As a result, the balance of the $175,000.00 retainer, $104,719.99 will be applied to any fees, charges and disbursements incurred during the reorganization case, subject, of course, to application and approval by this Court.

11. The professionals' fees and costs to be incurred by EL Law in the course of its representation of Debtors in these cases shall be subject in all respects to the application and notice

requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016 unless otherwise authorized by the Court.

12. The hourly rates for the attorneys at EL Law range from $300 to $625 per hour. The hourly rate of Mordan B. Edelboim and Brett D. Lieberman, the attorneys who will be principally working on this case, is $625 per hour. The hourly rates for the legal assistants and paralegals at EL Law begin at $260 per hour. EL Law periodically increases its hourly rates in accordance with its normal and customary business practices and requests the right to do so in this engagement.

13. There is no agreement of any nature as to the sharing of any compensation to be paid to EL Law, except between the attorneys of EL Law. No promises have been received by EL Law, nor any member or associate thereof as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

14. No attorney at EL Law holds a direct or indirect equity interest in the Debtors.

15. No attorney at EL Law is or has served as an officer, director or employee of the Debtors within two years before the Petition Date.

16. No attorney at EL Law is in control of the Debtors or is a relative of the Debtors.

17. No attorney at EL Law is a general or limited partner of a partnership in which the Debtors are also a general or limited partner.

18. No attorney at EL Law is or has served as an officer, director or employee of a financial advisor that has been engaged by the Debtors in connection with the offer, sale or issuance of a security of the Debtors, within two years before the Petition Date.

19. No attorney at EL Law has represented a financial advisor of the Debtors in connection with the offer, sale or issuance of a security of the Debtors' within three years before the Petition Date.

20. No attorney at EL Law has any other interest, direct or indirect, that may be affected by the proposed representation.

21. Except as set forth herein, no attorney at EL Law had or presently has any connection with the above-captioned Debtors or the estates on any matters in which EL Law is to be engaged, except that EL Law and our attorneys: (i) may have appeared in the past and may appear in the future in other cases in which one or more of said parties may be involved; and (ii) may represent or may have represented certain of the Debtors' creditors in matters unrelated to this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: June 25, 2025

By: /s/ *Morgan B. Edelboim*
Morgan B. Edelboim, Esq.

# **EXHIBIT 1**



MORGAN B. EDELBOIM, ESQ.
PARTNER

EDELBOIM LIEBERMAN, PLLC
2875 NE 191ST STREET, PENTHOUSE ONE
MIAMI, FL 33180
TEL: (305) 768-9909
FAX: (305) 928-1114
WWW.ELROLAW.COM

March 18, 2025

**Via Electronic Mail**:
Adam Hendry
Adam.hendry@tzadikconsulting.com

    Re:    <u>Engagement of Counsel</u>

Dear Mr. Hendry:

    Edelboim Lieberman PLLC and I ("EL") thank you for the opportunity to represent TMG2, LLC, Tzadik Sioux Falls Portfolio I, LLC, Tzadik Sioux Falls I, LLC, Tzadik Sioux Falls III, LLC, Tzadik Taylor's Place, LLC, Garden Villas Apartments, LLC, Tzadik Hidden Hills Apartments, LLC, Tzadik Woodlake Apartments, LLC, Tzadik Rapid City Portfolio I, LLC, Tzadik Lacrosse Apartments, LLC and other affiliated entities (collectively the "Clients") as general insolvency counsel with respect to their Debtor-Creditor relationships; including in connection with the analysis, evaluation, preparation and potential filing of Chapter 11 reorganizations (the "Matter").

    This letter (the "Engagement Letter") and the accompanying EL Law PLLC Standard Terms of Engagement, will establish the terms of our representation. To the extent of any conflict between this Engagement Letter and our Standard Terms of Engagement, the terms of this Engagement Letter shall control particularly as to the bankruptcy elements. If we have failed to cover any issues about which you have questions, please let me know. Good communication is critical to the success of our relationship and we want you to be happy with our services.

    You have engaged EL to represent the Clients in the Matter. If you want us to represent any other persons or entities, please advise us and we will consider whether we can undertake that additional representation.

    EL will represent the Clients in connection with the Matter. If this does not accurately reflect your understanding about the scope of the legal services we will provide, please let me know. We will perform all services normally and reasonably associated with this type of engagement that are consistent with our ethical and professional obligations. As we proceed with this representation, if you request that we expand the scope of this engagement, a separate engagement agreement may be required.

    First, to protect both of us and to comply with our professional obligations, this engagement is subject to clearance of any conflicts of interest with present or former clients of our firm. We have performed a conflict check regarding those parties who we anticipate will be adverse to the Clients and have determined that no conflict exists at this time.

Engagement Letter: Tzadik Sioux Falls Portfolio I, LLC

In order to help us in the future, if you become aware of additional potential adverse parties, then please provide us with the name of any such person or entity as soon as possible. Also, if we become aware of any potential or actual conflict, we will so advise you.

I will coordinate the legal services for this representation. My current hourly rate and the rate of my partner, Brett Lieberman is $625.00. I may also call upon other attorneys, employees and paralegals whom I believe have the ability to serve you as efficiently and effectively as possible. The rates of our other attorneys and paralegals range from $160.00 to $625.00. Please be aware that our rates may change from time to time to reflect increased expertise, seniority and promotions, and to reflect changes in economic conditions. Seniority adjustments occur annually, each January 1, and other rate increases may also take effect at that time it is important to us that you are satisfied with our services. Please let me know promptly if you believe that we should staff the work differently or if you have any suggestions about how we can better serve you.

We are committed to providing you with efficient, effective legal services. As agreed, you will pay us timely for our services and reimburse us for reasonable expenses in connection with your representation, regardless of the outcome. Prior to the filing of a bankruptcy case, we will bill you for fees and expenses on a monthly basis. Our statement will be due and payable upon receipt. Please see the attached EL Law PLLC Standard Terms of Engagement for additional terms applicable to our bills and your payment obligations. Additionally, if filing a bankruptcy case is required, we will issue an invoice just prior to filing that must be from the retainer prior to filing.

We are a law firm with many clients. To protect our ability to represent you and opportunities to represent other clients, we try to anticipate future conflicts and assess their impact, if any. Where a potential future conflict can be anticipated, disclosed and waived by our clients under the applicable ethics rules, we may ask our clients for consent to represent them upon being informed of the potential conflict.

In addition to our fees, we will bill for expenses incurred in connection with the representation. Such expenses may include long distance telephone calls, photocopying charges, travel expenses, couriers, filing fees, costs of subpoenas and depositions, and other costs that we may be required to advance on your behalf. We do not intend to make any profit on such expenses and will endeavor to pass on the actual costs of these expenditures. As a rule, we will ask you to advance amounts to pay for large expenses or pay them directly as they are incurred.

Our fees will be based primarily on the amount of time spent on the engagement. Each lawyer and paraprofessional has an hourly billing rate based generally on experience and special knowledge. The rate multiplied by the time expended on your behalf will be the initial basis for determining our professional fees.

If at any time prior to the filing of a bankruptcy the Clients decide to terminate this agreement for any reason, after applying funds in the retainer to EL's outstanding fees and costs, the balance will be immediately returned to the Clients.

This engagement contemplates the preparation and filing of a potential chapter 11 bankruptcy case. Please keep in mind that after filing the bankruptcy cases, the fees for the

2

Engagement Letter: Tzadik Sioux Falls Portfolio I, LLC

bankruptcy representation will be subject to review and award by the bankruptcy court upon application (generally every 120 days or some other period as determined by the Court) and often the retainer is only a small portion of the total fee in a Chapter 11 bankruptcy case. Prior to filing the bankruptcy case for the Client, my firm must be holding $150,000 in its attorney trust account plus estimated filing fees of $25,000 to stand for fees earned and costs incurred during the bankruptcy case.

After a bankruptcy filing, attorneys fees can only be paid from certain sources, primarily: (i) estate funds that are not subject to liens of secured creditors, (ii) estate funds which are subject to liens of secured creditors, subject to their consent, (iii) funds from new loans made to the Client by a DIP lender, subject to such lender's consent and Court approval; (iv) infusion of capital from a member and (v) the prepetition retainer. Here, it is anticipated that the resources available to the Client may be from going forward operations which may require negotiation with certain creditors and from exit funding from certain third parties or equity contributions as part of the reorganization of the Client. As a result, there is substantial risk in the payment of professional fees after the filing of a bankruptcy. We require that the $175,000.00 retainer be fully funded prior to filing the bankruptcy petition to have resources sufficient to cover a portion of the fees that we anticipate that we will incur throughout the first few months of the engagement. Ultimately, all professional fees will need to be paid, or arrangement made for the payment thereof, at the time of confirmation of a plan in these cases. We can address these matters in more detail now or in the future.

Unless you tell us otherwise, we will send all correspondence and statements for services related to this representation by email. EL will submit our invoices on a monthly basis. We will depend on you to let us know if you are not receiving information or responses in a timely manner. We understand unless advised otherwise, the Client agrees that EL may communicate with the Client concerning this matter by phone, fax, cell phone, e-mail, or letter.

If the terms of this letter are satisfactory, please sign a copy in the space provided and return it to me with a **retainer in the amount of $175,000.00.** EL's obligation to begin the representation on the Client's behalf will not begin unless and until we receive *(1) an executed copy of this engagement letter and (2) the $175,000.00 retainer.* If you have any questions, please feel free to contact me.

Very Truly Yours,

Morgan B. Edelboim, Esq.

**ACCEPTANCE TO BE SIGNED BY CLIENT**

3

Engagement Letter: Tzadik Sioux Falls Portfolio I, LLC

      I have read the foregoing Engagement of Counsel Letter and the accompanying EL LAW PLLC Standard Terms of Engagement. I understand their content, and hereby engage EL LAW PLLC in accordance with their terms and conditions.

Agreed and Accepted by all Clients[1]


_____
**ADAM HENDRY**
Its: Authorized Representative

Enclosure
**EL LAW PLLC "Standard Terms of Engagement"**

---

[1] TMG2, LLC, Tzadik Sioux Falls Portfolio I, LLC, Tzadik Sioux Falls I, LLC, Tzadik Sioux Falls III, LLC, Tzadik Taylor's Place, LLC, Garden Villas Apartments, LLC, Tzadik Hidden Hills Apartments, LLC, Tzadik Woodlake Apartments, LLC, Tzadik Rapid City Portfolio I, LLC, Tzadik Lacrosse Apartments, LLC

Engagement Letter: Tzadik Sioux Falls Portfolio I, LLC

## EL LAW PLLC
## STANDARD TERMS OF ENGAGEMENT

**FEES.** Unless we agree in the engagement letter to alternate fee arrangements, we will bill for our services at the firm's applicable hourly rates in effect at the time we render our services. Our rates and fees are designed to account for the following factors: the time and labor required, the novelty, complexity, and difficulty to the questions involved and the skill requisite to perform the legal service properly; the likelihood that acceptance of the matter will preclude other employment by the lawyer; the fee or rate, customarily charged in the locality for legal services of a comparable or similar nature; the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; the time limitations imposed by the client or by circumstances and, as between attorney and client, any additional special time demands or requests of the attorney by the client; and the nature and length of the professional relationship with the client. We have established our hourly rates using the foregoing factors and we adjust those base rates periodically, in light of these factors as well as cost of living and market considerations.

**STATEMENTS.** We do our best to render monthly statements for fees, expenses and charges. We normally render separate invoices for each legal matter we handle. The client also will receive a monthly statement that shows any past due invoice, by number and date, for each of the client's matters.

**BILLING AND PAYMENT.** We record time in 6-minute (.1 hour) increments unless other arrangements are made. Our statements will be based on time recorded in those increments.

The client agrees to pay statements within 15 days. Failure to pay statements promptly may result in temporary or permanent cessation of service. Payment of statements should be made in U.S. dollars or other agreed upon foreign currency, by wire transfer or in checks or drafts payable to EL LAW PLLC. Please note the date and identification number of the statement being paid, and return the remittance copy of our statement with your payment.

If our invoices are not paid within 15 days of the invoice date the client agrees to pay an interest charge on outstanding balances at an interest rate of one and one-half percent (1.5%) per month, or the maximum interest rate allowed by law, whichever is less, from the date due until paid. The client agrees to pay such interest on the outstanding balance in addition to the balance of fees and expenses due.

In the event the client fails to pay when due all amounts owed us, we will have the right to retain settlement proceeds received on behalf of client and/or recover the outstanding balance of fees and expenses and interest, as provided above, and all attorneys' fees incurred to collect these amounts. Such attorneys' fees will include payment for the time and expenses incurred by any lawyers or paralegals of EL LAW PLLC in any collection efforts as well as the fees and expenses of any outside law firm hired by EL LAW PLLC to collect the amounts due.

**CHARGING LIEN/RETAINING LIEN.** In the event the client fails to pay all amounts owed to us, the client agrees that EL LAW PLLC has the right to an attorneys' charging lien on the proceeds

Engagement Letter: Tzadik Sioux Falls Portfolio I, LLC

of any matter, case, litigation, settlement, distribution or other payments or property which may or have been received by the client in any case or matter in which EL LAW PLLC has provided legal advice or services and/or the right to a retaining lien on all property of the client (whether real or personal, regardless of homestead or other exemptions) in its possession, including without limitation, all settlement proceeds, retainer deposits, cash, money, files (whether in electronic or paper form), documents, papers, pleadings, correspondence or any work product in connection with any case or matter for which the client has retained EL LAW PLLC.

**RESPONSES TO AUDITORS' INQUIRIES**. We are frequently asked to provide information to auditing firms regarding legal matters of our clients. We respond to those inquiries with the same level of care and professionalism that we use to handle the client's other legal work and will charge for these services at the same rates. When an auditing firm requests information on the client's behalf, that request will be deemed to be the client's consent for us to disclose that information to that firm.

**DISBURSEMENTS AND CHARGES**. In addition to payment of our fees, the client agrees to pay expenses incurred by us in connection with the representation. Such expenses may include long distance telephone calls, photocopying charges, travel expenses, couriers, filing fees, costs of subpoenas and depositions, including court reporter fees, and other costs and expenses advanced on our client's behalf. We do not intend to make any profit on such expenses and we will pass them on to you based as closely on our costs as possible. We may, however, receive certain benefits from having incurred certain costs, such as benefits accorded in connection with travel expenditures (i.e., frequent flyer points). Those benefits will be retained by the firm or the individual to whom they were awarded without credit to the client.

We may also ask you to advance payment for large expenses or to pay them directly.

**TRAVEL**. We generally record the time spent traveling while performing work in furtherance of the client's engagement.

**TERMS OF ENGAGEMENT**. The client or EL LAW PLLC may terminate the representation for any reason by written notice, subject on our part to applicable rules of professional conduct. In the event we terminate the engagement, we will take such steps as are reasonably practicable to protect the client's interests in this matter and, if the client so requests, we will provide successor counsel with material the client has provided us.

Upon the termination of our engagement, the client will pay within 30 days for all services rendered and disbursements and other charges paid or incurred in connection with our engagement. If the client terminates our engagement or if EL LAW PLLC terminates the engagement in accordance with the following paragraph, the client will also pay our fees and expenses in connection with any transition of the client's work to successor counsel.

If the client fails to honor the terms of the engagement, to cooperate, or to follow our advice on a material matter that would or could, in our view, render our continued representation unlawful or unethical, EL LAW PLLC may withdraw from the representation. If we elect to withdraw, the

6

Engagement Letter: Tzadik Sioux Falls Portfolio I, LLC

client will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents or pleadings necessary to complete our withdrawal.

Unless previously terminated or other arrangements are made, EL LAW PLLC's representation will terminate upon our sending the client our final statement for services rendered. Unless we agree otherwise, we will have no continuing obligation to advise the client with respect to future legal developments once this matter concludes.

**RECORD RETENTION**. We will maintain necessary documents relating to this matter in our client files. If we receive no guidance from the client, we will employ the following procedure when a matter concludes:

    1. Upon expiration of our normal retention period for this kind of matter, we will notify the client by mail at the client's last known address that the retention period has run, and seek the client's guidance on disposition of the file.

    2. If we receive a response from the client within 2 months, we will follow the client's instructions for disposition of the file. If those instructions require substantial handling of the file, or continued retention of it, we will charge our normal fees for such procedures.

    3. If we do not receive a response from the client within 2 months, the file will be destroyed pursuant to our normal procedure.

At the conclusion of a matter, it is the client's obligation to tell us which, if any, documents in our files that it wishes to receive. Electronic records relating to this matter will be made available to the client, if requested, and to the extent they are still easily accessible.

**JURISDICTION, VENUE AND MANDATORY FORUM CLAUSE**. In the event of a dispute between the client and EL, the parties agree that Florida law shall apply, that venue shall be solely maintained in Miami-Dade County, Florida and that the Eleventh Judicial Circuit in and for Miami-Dade County, Florida shall have exclusive jurisdiction over such dispute.